IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:16-cv-00296-FDW

| | |
|---|---|
| TIMOTHY LAMONT RUFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THOMAS G. WALKER, ) | **ORDER** |
| United States Attorney; ) | |
| SHELBY POLICE DEP'T; ) | |
| DAVID A. WACASTER, ) | |
| Detective Shelby Police Dep't, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on an initial review of Plaintiff's pro se complaint which he filed pursuant to 42 U.S.C. § 1983. See 28 U.S.C. § 1915A(b)(1).

I.      BACKGROUND

On July 8, 1996, Petitioner was indicted with four co-defendants on various federal charges in this District which included conspiracy to violate the Hobbs Act, armed robbery, using and carrying a firearm during a crime of violence, and being a felon-in-possession of a firearm. (Criminal Case No. 4:96-cr-00056, Doc. 1: Indictment). On September 20, 1996, Petitioner entered into a written plea agreement with the Government wherein Petitioner agreed to plead guilty to Count One (conspiracy to obstruct, delay and affect commerce by robbery, in violation of 18 U.S.C. § 1951); Count Two (obstruct, delay and affect commerce by robbery and aiding abetting the same, in violation of 18 U.S.C. §§ 1951 & 2); and Count Three (using a firearm during and in relation to a crime of violence, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c) and 2). The Government agreed to dismiss the remaining counts

1

of his indictment. Petitioner's pleas of guilty were later accepted following a Plea and Rule 11 hearing before the magistrate judge.

In Plaintiff's presentence report (PSR), the probation officer described the offense conduct which led to his federal charges.

> In the early morning hours on 2/22/96, Timothy Ruff, Kelvin Lynch, Quon Moses, Harold Guest, Christy Bridges (age 17),and Lynn Hendricks were playing cards and smoking marijuana at Hendricks' apartment. Ruff began telling the others he wanted to steal a car. Ruff, Lynch, Moses, Guest and Bridges began planning a robbery. They discussed several options, and finally decided on Robbs' Auto Shop. Guest drew a diagram of the area. Bridges was directed by Ruff to enter the shop first to gather information and act as a decoy.
>
> Around 9:00 a.m. that morning, Guest went to work at K Kentucky Fried Chicken. Ruff, Lynch, Moses and Bridges proceeded to Robbs' Auto Shop. At approximately 9:45 a.m., Bridges entered the shop and approached Johnny Robbs on the pretense she was interested in purchasing a car. Robbs advised he was busy and requested she return in 15 minutes.
>
> At approximately 10:20 a.m., Ruff, Lynch, Moses and Bridge returned. Bridges entered the shop and she and Robbs proceeded to his office where they discussed the purchase of an automobile. Amos Norman, Robbs' friend, entered the office. Approximately 4 minutes later, Ruff, Lynch and Moses entered the shop. Lynch pulled a sawed-off Boito, model BR-7, .20 gauge double barreled shotgun, out from under his coat and announced "If anybody moves, I'll kill you, I'll blow you in two." Ruff and Bridges forced Robbs and Norman to the ground, with Bridges remarking "I am a bad white bitch, if I wasn't a bad white bitch, why would I be traveling with a gang of niggers like this." Ruff and Bridges hog tied the men. Robbs was forced to reveal the location of the money and keys to the automobiles. Moses located and took possession of a bank bag containing $12,800 in cash and a Sundance, Boa, .25 caliber semi-automatic pistol. Bridges took keys to the automobiles on the lot. Lynch, armed with the shotgun, was standing watch by the door. Moses handed Lynch a pair of scissors and Lynch Ruff then took the scissors, and

2

instructed Lynch to return to the door to stand watch, while Ruff repeatedly stabbed Robbs. Robbs was able to free a hand and attempted to intercede the oncoming stabs. Ruff then tied a rope around Robbs' neck, causing him to lose consciousness. Ruff, Lynch, Moses and Bridges left the shop on foot. All four met at Hendricks' apartment, changed clothes, and split the money. Each participant received $1,000. Ruff hid the weapons and the remainder of the money in a suitcase in the apartment.

At approximately 10:54 a.m., Shelby Police responded to a robbery at Robbs' Auto Shop and found Robbs and Norman at the scene. The victims described the assailants. An officer recalled seeing persons in the area earlier that day matching the description of the assailants. Police began canvasing the area and received information that persons fitting the assailants' descriptions were seen around the Ramblewood Apartment Complex. At approximately 11:30 a.m., police received an anonymous call that three black males fitting the description of the suspects were in apartment #43 at Ramblewood Apartments.

Police proceeded to Ramblewood Apartments. Two wallets belonging to the victims were found in a trash dumpster near apartment #43. With the tenant's, Lylll1 Hendricks, permission, officers searched apartment #43. The search resulted in the seizure of a suitcase containing a Sundance, Boa, .25 caliber semi-automatic pistol; a magazine for the pistol containing 7 rounds; a sawed-off, .20 gauge double barreled shotgun with a pistol grip, (sawed off to approximately 14°), $2,000 in cash, and a ring and identification belonging to Timothy Ruff. Clothes were also found which were determined to have been worn by the assailants during the robbery. A key was found that fit a Honda at Robbs' Auto Shop.

Ruff and Lynch proceeded to Kentucky Fried Chicken and advised Guest they completed the robbery. Ruff admitted he thought he killed Robbs. Ruff and Lynch left the restaurant, and shortly thereafter, Guest paged Ruff, asking for $600 of the proceeds. Ruff and Lynch returned to the restaurant and agreed that Guest would later be given $600 of the stolen money. Upon leaving Kentucky Fried Chicken, Ruff and Lynch were apprehended. Ruff was in possession of $7,932 and a beeper he bought with $84 of the stolen money. Lynch was in possession of approximately $1,300 and 48 ounces of

> marijuana he and Ruff bought with stolen money. Moses was arrested on 2/24/96 and Guest on 2/26/96.
>
> On 7/8/96, a search of the National Firearms Registration and Transfer Record was conducted. The results of the search indicated that Kelvin Lynch and Michael Brown did not have any firearms registered to them. On 7/22/96, the firearms were certified to have traveled in interstate commerce.
>
> Johnny Robbs was treated for 27 puncture wounds, including 5 to the left chest area. In addition to puncture wounds to the jaw, right ear, right elbow, and lower abdomen, Robbs had extensive bruising to the face and clavicle area. Robbs remained in intensive care until his release on 2/24/96. Robbs' attending physician described Robbs' wounds as life threatening and commented that it appeared as if Robbs had been hanged. Although Amos Norman said he was not injured, the responding officers noted that Norman was pale and shaking. Robbs recalled that Norman had difficulty breathing during the robbery and was taken to the hospital for observation.

(Doc. No. 110: PSR).

On March 26, 1997, the Court, the Honorable Lacy H. Thornburg presiding, sentenced Petitioner to a term of 240-months' imprisonment on Counts One and Two, to be served concurrently, and a term of 120-months on Count Three with such sentence to run consecutively to the sentences imposed for Counts One and Two. (Doc. 68: Judgment)

On appeal from this judgment, Petitioner argued that the Government breached the written plea agreement by failing to move for a downward departure based on Petitioner's substantial assistance under USSG § 5K1.1. The Court rejected this claim after noting that there was no unconditional promise to move for a 5K1.1 departure, and that Petitioner had even

refused to cooperate with the Government prior to sentencing. Petitioner's judgment was upheld in all respects. United States v. Moses, 135 F.3d 771 (Table) (4th Cir. Feb. 20, 1998).[1]

On August 30, 1999, Petitioner filed a motion challenging his order of restitution which the Court construed as a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. After noting that the motion was untimely under the one-year time frame provided for under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court dismissed the motion. (Civil Case No. 1:99-cv-00183-LHT).

On September 9, 2004, Petitioner filed a second § 2255 motion which the Court dismissed after finding that it was without merit. (1:04-cv-00186-LHT, Doc. 2). Petitioner then followed with additional petitions for collateral relief, each of which was dismissed as an unauthorized, successive petition pursuant to 28 U.S.C. § 2255(h). (1:12-cv-00187-MR; 1:13-cv-00178-MR).

## II. DISCUSSION

In the present case, Plaintiff contends that on February 22, 1996, the Shelby Police Department conducted an illegal search of his locked suitcase without a search warrant, and that Assistant United States Attorney Thomas Walker knew that the search was illegal and that he lied to the grand jury in pursuit of an indictment. Plaintiff asserts that Detective Wacaster lied to the same grand jury about the illegally obtained gun. Plaintiff maintains that these alleged actions caused him to be charged and ultimately convicted of the three counts in his indictment that is discussed above, and that consequently, he has wrongfully spent 20 years of his life in federal prison.

---

[1] Petitioner's co-defendant, Quon Simone Moses, was made the lead appellant in this consolidated appeal.

Through his § 1983 complaint, Plaintiff challenges the legality of his federal prosecution and present confinement contending that his federal constitutional rights were violated and he raises a claim for monetary damages and injunctive relieve that would require Mr. Walker to turn over all of the evidence in Case No. 04:96-cr-00056-MR-1, and he would like an order requiring the Shelby Police Department to serve him with all of the evidence related to his successful prosecution in the federal case. (1:16-cv-00296, Doc. No. 1: Complaint at 4-5).

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. <u>A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983</u>. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

<u>Id.</u> at 486-87 (footnotes omitted; emphasis added). Here, a judgment in Plaintiff's favor would necessarily require the Court to declare that Plaintiff's criminal judgment was obtained following an improper prosecution and conviction. Thus, under <u>Heck</u>, Plaintiff cannot bring his current claim for monetary damages unless he can show that his underlying convictions have been reversed, expunged, or otherwise invalidated. It is undisputed that Plaintiff's convictions are still valid after having withstood multiple collateral attacks, and that he is still incarcerated in

federal prison. Thus, this action for monetary damages must be dismissed as barred by Heck.

Finally, the Court notes that Plaintiff, in an effort to challenge his federal convictions and present incarceration, has presented a claim that falls squarely under the federal habeas statute as codified in 28 U.S.C. § 2255. However, as noted in two of the orders dismissing Plaintiff's § 2255 motions to vacate, he must first obtain authorization to file a successive petition from the Fourth Circuit pursuant to 28 U.S.C. § 2255(h). See In re Vial, 115 F.3d 1192, 1197 (4th Cir. 1997) (en banc); United States v. Winestock, 340 F.3d 200, 205 (4th Cir. 2003).

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's § 1983 complaint is **DISMISSED**. (Doc. No. 1).

The Clerk is respectfully directed to close this civil case.

**SO ORDERED**.

Signed: September 8, 2016

_____
Frank D. Whitney
Chief United States District Judge